IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

No. 24-2221

DAVID P. BOURKE,

*Plaintiff-Appellant,*

*-vs-*

DENIS RICHARD MCDONOUGH, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF VETERANS AFFAIRS

*Defendant-Appellee.*

————————————————————

Appeal from the United States District Court
for the Northern District of Illinois
No. 22-cv-3164 — Matthew F. Kennelly, District Judge.
————————————————————

# BRIEF AND SHORT APPENDIX
# OF PLAINTIFF-APPELLANT

Kenneth N. Flaxman
*Counsel of Record*
Joel A. Flaxman
200 South Michigan Avenue
Suite 201
Chicago, Illinois 60604
(312) 427-3200
*Attorneys for Plaintiff-Appellant*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 24-2221

Short Caption: Bourke v. McDonough

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐   **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

David Bourke

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Kenneth N. Flaxman P.C.

(3)    If the party, amicus or intervener is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Kenneth N. Flaxman    Date: 03/24/2023

Attorney's Printed Name: Kenneth N. Flaxman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 200 S Michigan Ave Ste 201

Chicago, IL 60604

Phone Number: (312) 427-3200    Fax Number: (312) 427-3930

E-Mail Address: knf@kenlaw.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __24-2221_____

Short Caption: __Bourke v. McDonough_____

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☑    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**  New attorney added

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 David P. Bourke

_____

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 Law Office of Kenneth N. Flaxman P.C.

_____

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        _____

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        _____

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

_____

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

_____

Attorney's Signature: _/s/ Joel A. Flaxman_____    Date: __12/16/2024_____

Attorney's Printed Name: __Joel A. Flaxman_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address: __200 S Michigan Ave. Ste 201_____

    __Chicago, IL 60604_____

Phone Number: _312-427-3200_____    Fax Number: __312-427-3930_____

E-Mail Address: _jaf@kenlaw.com_____

# TABLE OF CONTENTS

I.     Jurisdictional Statement ........................................................... 1

II.    Issues Presented for Review ..................................................... 1

III.   Statement of the Case ............................................................... 1

       A.  Background Facts ............................................................... 3

       B.  Door Closings at the Hines VA Hospital in
           Response to COVID ........................................................... 3

       C.  Application of the Door Closing Policy to
           Plaintiff ............................................................................. 5

       D.  The District Court's Ruling on the Cross-
           Motions for Summary Judgment .................................... 9

IV.    Summary of Argument ............................................................ 10

V.     Argument .................................................................................. 12

       A.  Standard of Review ........................................................... 12

       B.  The District Court Applied an Incorrect Legal
           Standard to an Employer's Decision to Rescind a
           Reasonable Accommodation ........................................... 12

       C.  The District Court Erred in Requiring Plaintiff to
           Present Evidence of a "Significant Risk" to Defeat
           Summary Judgment .......................................................... 16

VI.    Conclusion ................................................................................ 18

# TABLE OF AUTHORITIES

*Bilinsky v. American Airlines, Inc.*, 928 F.3d 565
(7th Cir. 2019) ........................................................ 10, 13, 14-15

*Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725
(N.D. Ill. 2014) ....................................................... 10, 13, 14, 16

*Kass v. Synovus Fin. Corp.*, 800 F. App'x 804 (11th Cir. 2020) ................. 13

*McDaniel v. Syed*, 115 F.4th 805, 822 (7th Cir. 2024) ............................ 12, 17

*Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599
(7th Cir. 2004) ..................................................................... 12

*US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) .................................. 10-11

*Walters v. Pro. Lab. Grp., LLC*, 120 F.4th 546 (7th Cir. 2024) ................... 12


28 U.S.C. § 1291 .................................................................. 1

28 U.S.C. § 1331 .................................................................. 1

29 U.S.C. § 794 .................................................................. 2

## I.   Jurisdictional Statement

Plaintiff invoked the jurisdiction of the district court under 28 U.S.C. § 1331 to assert a claim arising under 29 U.S.C. § 794.

The district court entered judgment in favor of defendant and against plaintiff on June 11, 2024. The judgment resolved all claims of all parties.

Plaintiff filed his notice of appeal on July 9, 2024, and invokes the jurisdiction of the Court of Appeals pursuant to 28 U.S.C. § 1291.

## II.   Issues Presented for Review

1.     Does the Rehabilitation Act, 29 U.S.C. § 794, allow an employer to rescind a "reasonable accommodation" it granted to a disabled employee as what the district court described as a "management prerogative," without any showing that the accommodation was causing an undue hardship?

2.     Alternatively, must a plaintiff who challenges an employer's claim about the reasonableness of a proposed accommodation present evidence of a "significant risk" that the accommodation is inadequate to create a disputed question of fact and avoid summary judgment?

## III.   Statement of the Case
### A. Background Facts

Plaintiff David Bourke was a disabled employee of the Department of Veteran Affairs who began employment for the VA in 2009.[1] (Short

---

[1] Bourke retired from the VA in July of 2024.

Appendix 1.) By June of 2019, plaintiff had become "unable to walk [more than] 15 feet without cane/walker due to shortness of breath due to underlying lung condition," and "with cane or walker, still unable to walk [more than] 40 feet due to back pain and breathing." (ECF No. 31-2 at 197, "Request for Medical Documentation.")

The VA provided plaintiff with a motorized scooter to use in the workplace sometime before October of 2018. (Bourke Dep. 25:16-20, ECF No. 31-2 at 28.) Plaintiff could not perform his job without the scooter. (Bourke Dep. 53:10-54:14, ECF No. 31-2 at 56-57.)

Plaintiff would leave the scooter at the hospital each night in a locked and secure location. (Bourke Dep. 36:14-37:2, ECF No. 31-2 at 39-40; Bourke Dep. 35:22-36:9, ECF No. 31-2 at 37-38.) The locked office provided "a very secure location that was behind locked doors" for the motorized scooter. (Bourke Dep. 35:3-4, ECF 31-2 at 38.)

On June 17, 2019, plaintiff requested the VA to provide him with several accommodations, including "a parking reserved slot in the back of bldg. 200 by outpatient pharmacy and a handicap parking spot." (Defendant's Exhibit 4, Written Confirmation of Request for Accommodation, ECF No. 31-2 at 109.) The parking space was the closest to plaintiff's work area in Building 200. (Bourke Dep. 36:26:23-24, ECF No. 31-2 at 39.)

The VA granted the accommodation on August 30, 2019, assigning plaintiff a parking space adjacent to the pharmacy entrance in Building 200, with a sign designating it as "reserved parking." (Accommodation Request Determination, ECF No. 31-2 at 295-96; Smith Dep. at 7:24-8:10, ECF No. 31-3 at 8-9.)

### B. Door Closings at the Hines VA Hospital in Response to COVID

Starting on March 16, 2020, as a response to the COVID pandemic, the VA closed all entrance doors to Building 200 other than the main entrance lobby and the emergency room. (ECF No. 31-3 at 76.) The door plaintiff entered each day pursuant to the accommodation was among the entrances that were closed. (ECF No. 31-3 at 76.)

In choosing which doors to close, the VA was aware that door closings would have an impact on persons who had "reasonable accommodation" parking spaces. (Beidelschies Dep. 20:4-7, ECF No. 31-3 at 58.) The VA did not engage in any "interactive process" with its employees, like plaintiff, whose "reasonable accommodation" parking spaces were impacted by the door closings. (Schierer Dep. 8:20-9:1, ECF No. 31-2 at 247.) The position of the VA was that when door closings impacted persons who had "reasonable accommodation" parking spaces, "the employee would communicate that to their supervisor, the supervisor would work with the employee and the

reasonable accommodation team to accommodate, if possible, that employee." (Beidelschies Dep. 24:8-11, ECF No. 31-3 at 62.)

The VA's requirement that the employee restart the reasonable accommodation process is contrary to Section 15(c) of the "VA Handbook 5975.1," Defendant's Exhibit 8, ECF 31-2 at 225.[2] This section provides as follows:

> Once an accommodation request is approved for a permanent disability/functional limitation, the employee should be allowed to keep the accommodation after the DMO [Designated Management Official] no longer supervises the employee. In rare instances, the accommodation may need to be changed, but the DMO and LRAC [Local Reasonable Accommodation Coordinator] should first check with RC [Regional Counsel], OGC [Office of General Counsel], or NRAC [National Regional Accommodations Coordinator] before making any changes that are not requested by the employee. The accommodation, including necessary equipment and software, also "goes with" the employee when transferring to a new VA location. If an employee's job duties change, the LRAC may check to verify that the current accommodation is still needed and effective.

(VA Handbook 5975.1, Section 15(c), ECF No. 31 at 225.)

The VA regulations define an "undue hardship" as "the significant difficulty or expense incurred or anticipated" by providing a particular accommodation. (VA Handbook 5975.1, Section 2(q), ECF No. 31 at 207.) When

---

[2] The district judge concluded that this provision of the Handbook exceeds the "minimum requirements of the Rehabilitation Act" and therefore is irrelevant to this case. (Short Appendix 11.)

the claimed hardship is unreasonable cost, "[o]nly the Secretary, VA, can deny a request based on cost." (*Id.*, Section 2(q)(1), ECF No. 31 at 207.)

### C. Application of the Door Closing Policy to Plaintiff

In March of 2020, plaintiff complained to Associate Police Chief Eric Ousley of the Hines Police Department about the impact of closing the door by the outpatient pharmacy. (Bourke Dep. 37:22-38:14, ECF No. 31-2 at 41.) Plaintiff asked Ousley for permission to continue to use the door by the outpatient pharmacy, promising that, after entering the workplace, he would retrieve his scooter and drive to the main entrance to be screened before going to his work area. (Bourke Dep. 38:7-14, ECF No. 31-2 at 41.)

Ousley gave plaintiff permission to continue to enter through the pharmacy entrance on the understanding that plaintiff "will continue to be screened every day." (Bourke Dep. 38:15-20, ECF No. 31-2 at 41.)

At the start of each workday until May 14, 2020, plaintiff would walk from his "reasonable accommodation" parking spot to the hospital entrance and retrieve his motorized scooter from a locked office; plaintiff would reverse the process at the end of the day. (Bourke Dep. 36:14-37:2, ECF No. 31-2 at 39-40; Bourke Dep. 35:22-36:9, ECF No. 31-2 at 37-38.) The locked office provided "a very secure location that was behind locked doors" for the motorized scooter. (Bourke Dep. 35:3-4, ECF 31-2 at 38.)

On May 14, 2020, Shawn Scheirer, a "Human Resource Specialist specializing in reasonable accommodation" (Scheirer Dep. 5:4-7, ECF No. 31-2 at 244), instructed the Hines Police Department to stop plaintiff from continuing to use the pharmacy entrance. (Schierer Dep. 12:1-20, ECF No. 31-2 at 251.) Scheirer could not recall why he gave this order; Scheirer testified at his deposition that he had received this information from the Hines police (Schierer Dep. 12:9-11, ECF No. 31-2 at 251) but also stated that after learning that plaintiff was continuing to use the pharmacy entrance, he "notified the police." (Schierer Dep. 12:20, ECF No. 31-2 at 251.)

The VA did not initiate any conversation or other "interactive process" with plaintiff about his use of the pharmacy entrance before it ordered plaintiff to stop using that entrance. (Scherer Dep. 7-8, ECF No. 31-2 at 20:20-21:1.) Had the VA engaged in any interactive process, the VA would have learned that a screener from the hospital Emergency Room could have been detailed to the pharmacy entrance to assess plaintiff when he arrived for work. (Bourke Dep. 54:24-55:9, ECF No. 31-2 at 57-58.)

After learning that he could no longer enter through the "pharmacy entrance," plaintiff requested the VA to provide him with a new reserved parking space adjacent to the front lobby. Plaintiff wrote the following in an email to Deputy Police Chief Ousley and Scheirer on May 14, 2020:

I have spoken to the both of you this morning, Thursday 5/14/20, about having HR and Hines police, help me in obtaining a new reasonable accommodation parking spot due to my disabilities causing hardship and pain in walking. My disabilities severely limit my ability to ambulate any distance. I [am] hoping the Hines police and Hines human resources, can work together and quickly get a new reserved parking spot assigned to me until the back of Bldg. 200 is opened up again for entrance? I don't know of any area room or closet, in the ED department, where I could lock up my electric scooter safely and have a key to access it when needed? I understand the agreement I had was rescinded and I understand why, but this still doesn't help me accessing my place of employment (Hines VA hospital ASU, Bldg. 200 basement room B 019.) I will be forced to park out front, which will require me to try and walk a greater distance to my duty area within the hospital.

(ECF No. 44-1 at 3.)

The VA rejected this request because it would have required that a handicapped parking space be designated for use by a specific person. (Schreier Dep. 36:1 to 37:7, ECF No. 31-2 at 275.) In addition, VA police objected to providing plaintiff with an accessible parking spot because it would have required them "to monitor and throw people out of that spot and write tickets and tow their cars every day of the week." (Bourke Dep. 54:11-14, ECF No. 31-2 at 57.)

The VA also rejected plaintiff's request to store his scooter overnight in the hospital Emergency Room. (Defendant's Exhibit 19, Email, Wirtjes to Graham, May 15, 2000, ECF No. 31-3 at 128.) Christopher Wirtjes, the chief of the patient administration service at the VA (Wirtjes Dep. 5:7-12,

ECF No. 31-2 at 175) explained that defendant rejected this proposal because "I knew I wasn't going to get approval for that." (Wirtjes Dep. 11:1-2, ECF No. 31-2 at 181.)

On May 18, 2020, the VA offered plaintiff a parking spot in front of Building 1, Section C and told plaintiff that he could store his motorized scooter overnight in the Patient Advocate Department. (Short Appendix 6.) Plaintiff knew of thefts of personal property, including a scooter, from the Patient Advocate Department (Bourke Dep. 52:17-19, 52:25-53:2, ECF No. 31-2 at 55-56) and believed that his scooter would not be safe there. (Short Appendix 5-6.) Plaintiff also knew that the VA would not replace his motorized scooter if it was stolen from the Patient Advocate Department. (Bourke Dep. 53:1-3, ECF 31-1 at 53.) Plaintiff explained to his supervisor, who parked her larger scooter overnight in that storage area,

> I have a breakdown scooter. You have a completely assembled scooter bigger than mine … Mine is so easy to steal. They would just take it apart and throw it in the trunk of any car. This spot is not going to work for me.

(Bourke Dep. 50:6-13, ECF No. 31-2 at 53.)

Plaintiff told defendant that he needed an area where he could, as he had done before the COVID closures, store his motorized scooter behind locked doors. Defendant did not accommodate that request:

> And they told me no. They are not giving me a key. They're not giving me a closet. They are not giving a room to lock my scooter in. So I rejected all that they gave me and told them it was unsure. I am not going to have my scooter stolen, which I rely on very heavily.

(Bourke Dep. 51:11-17, ECF No. 31-2 at 54.) Plaintiff would have accepted a "locked spot" to store his scooter (Bourke Dep. 57:24-25, ECF No. 31-2 at 60), "but since they would not give me a locked room and a key, I refused the spot." (Bourke Dep. 57:25-58:2, ECF No. 31-2 at 60-61.)

The VA reopened the "pharmacy entrance" on June 29, 2020. (Short Appendix 7.) Plaintiff was then able to enter and leave through the pharmacy entrance. (*Id.*)

## D. The District Court's Ruling on the Cross-Motions for Summary Judgment

On cross-motions for summary judgment, the district court concluded that an employer may rescind a previously granted reasonable accommodation without a showing of undue hardship. (Short Appendix 8-12.) The district court rejected plaintiff's reliance on the VA Handbook, describing the agency rules as going beyond "the minimum requirements of the Rehabilitation Act." (Short Appendix 11.)

The district court granted defendant's motion for summary judgment, concluding that offering plaintiff a parking spot in front of Building 1, Section C, and allowing plaintiff to store his scooter overnight in the Patient Advocate Department constituted a reasonable accommodation. The court

below rejected plaintiff's concerns about the security of his scooter, concluding that "there is no evidence that there was a significant risk that someone would steal and dissemble Bourke's scooter from the non-public-facing Patient Advocate space." (Short Appendix 15.)

### IV. Summary of Argument

In *Bilinsky v. American Airlines, Inc.*, 928 F.3d 565 (7th Cir. 2019) this Court established the rule that "[a]bsent some change in circumstance, an employer may not rescind an accommodation simply because it is inconvenient or burdensome." *Id.* at 573. When, as in this case, the employer rescinds an accommodation, the legality of the recission turns on whether it was reasonable "to withdraw that existing accommodation." *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725, 734 (N.D. Ill. 2014).

The district court in this case relied on a different (and incorrect) standard when it granted summary judgment to the employer. In the view of the Court below, an employer does not need any justification to rescind a reasonable accommodation it had granted to an employee and require plaintiff to request a new accommodation. This standard cannot be squared with *Bilinsky*. Nor is the standard applied by the district court consistent with the decision of the Supreme Court in *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002):

The original accommodation that defendant granted to plaintiff was "reasonable on its face." *Barnett*, 535 U.S. at 391. This means that the burden was on the employer to "demonstrate undue hardship." *Id.* at 402. Defendant did not attempt to meet this burden before it rescinded plaintiff's reasonable accommodation and the district court erred in concluding that the employer was not required to show undue hardship before it rescinded the reasonable accommodation.

The district court also held that defendant was entitled to summary judgment because, after it had rescinded plaintiff's reasonable accommodation, plaintiff rejected an alternative accommodation. But the proposed accommodation was not "reasonable on its face." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002), because plaintiff had a legitimate fear that his scooter would be stolen if he stored it overnight in an unsecured area

The court below held that plaintiff was required to show "a significant risk" that his motorized scooter would be stolen if stored overnight in the non-locked storage space offered by defendant. The concept of "significant risk" has no place in summary judgment proceedings. The disputed facts about the reasonableness of the accommodation offered by defendant could not fairly be resolved without a trial.

The Court should therefore reverse the grant of summary judgment to defendant and remand with instructions to grant judgment to plaintiff or, in the alternative, to hold a trial to resolve the factual dispute about the reasonableness of the offered accommodation.

## V.   Argument

### A. Standard of Review

The Court reviews de novo the district court's order granting summary judgment, viewing the facts in the light most favorable to the non-moving party. *Walters v. Pro. Lab. Grp., LLC*, 120 F.4th 546, 548 (7th Cir. 2024).

### B. The District Court Applied an Incorrect Legal Standard to an Employer's Decision to Rescind a Reasonable Accommodation

The Rehabilitation Act requires an employer to provide a "reasonable accommodation" for "a disabled individual's limitations." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 400 (2002).[3] An accommodation is not reasonable if it causes "undue hardship in the particular circumstances." *Id.* at 403.

In this case, Defendant VA granted plaintiff a reasonable accommodation for his inability to walk more than 15 feet without an assistive device

---

[3] "[C]ourts construe and apply" the Rehabilitation Act and the ADA "in a consistent manner." *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir. 2004); *McDaniel v. Syed*, 115 F.4th 805, 822 (7th Cir. 2024).

by providing plaintiff with a reserved parking space closest to plaintiff's work area. Defendant subsequently rescinded that accommodation.

The district court rejected plaintiff's claim that the VA could not lawfully rescind the accommodation without showing an "undue hardship." In the view of the district court, it is an "employer's prerogative" to rescind a reasonable accommodation. (Short Appendix 9.)

This Court adopted a different rule in *Bilinsky v. American Airlines, Inc.*, 928 F.3d 565 (7th Cir. 2019):

> Absent some change in circumstance, an employer may not rescind an accommodation simply because it is inconvenient or burdensome.

*Bilinsky*, 928 F.3d at 573. Contrary to the view of the district court, when an employer rescinds a reasonable accommodation, "the question becomes instead whether it was reasonable for Crane to withdraw that existing accommodation." *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725, 734 (N.D. Ill. 2014). The Eleventh Circuit applied this rule in *Kass v. Synovus Fin. Corp.*, 800 F. App'x 804, 810 (11th Cir. 2020) when it set aside the grant of summary judgment because a new supervisor had refused to abide by a previously granted reasonable accommodation (the ability to grant short breaks). The Eleventh Circuit viewed the employer's rescission of the reasonable accommodation as the "failure to provide a reasonable accommodation." *Id.*

There is no merit in any argument that the COVID pandemic provided the "undue hardship" required to rescind a previously granted reasonable accommodation. The VA did not initiate any conversation or other "interactive process" with plaintiff about his use of the pharmacy entrance. Instead, defendant closed that entrance and then ordered plaintiff to stop using the pharmacy entrance even though plaintiff had negotiated an accommodation with the VA police. It was defendant's obligation under the Rehabilitation Act to work with plaintiff "to adjust the existing accommodation" for any changed circumstances. *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725, 734 (N.D. Ill. 2014). Defendant failed to engage in any interactive process before ordering plaintiff to stop entering the workplace through the pharmacy entrance.

Defendant argued in the district court that it was entitled to rescind the reasonable accommodation it had granted to plaintiff and require plaintiff to request a new accommodation. (Beidelschies Dep. 24:8-11, ECF No. 31-3 at 62.) The district court accepted this argument by equating the recission of a reasonable accommodation with the rejection of an "employee's preferred accommodation" in favor of an "alternative reasonable accommodation." (Short Appendix 9.) This is incorrect. As this Court held in *Bilinsky v. American Airlines, Inc.*, 928 F.3d 565 (7th Cir. 2019), "an

employer may not rescind an accommodation simply because it is inconvenient or burdensome." *Id.* at 573.

It is incorrect to describe this case as one where an employer "alter[ed] the reasonable accommodations it provides to an employee in response to changing circumstances." (Short Appendix 9.) On the contrary, defendant abrogated, rescinded, and revoked the previously granted reasonable accommodation.

In choosing which doors to close, the VA knew that door closings would have an impact on persons (like plaintiff) who had been granted "reasonable accommodation" parking spaces. (Beidelschies Dep. 20:4-7, ECF No. 31-3 at 58.) The VA did not engage in any "interactive process" with those of its employees, like plaintiff, whose "reasonable accommodation" parking spaces were impacted by the door closings." (Schierer Dep. 8:20-9:1, ECF No. 31-2 at 247.) That is, defendant did not "alter" the reasonable accommodation; defendant treated the reasonable accommodation as a nullity and insisted that plaintiff restart the reasonable accommodation process.

Defendant argued in the district court, and the district court agreed, that once an employer rescinds an employee's reasonable accommodation, "the employee would communicate that to their supervisor, the supervisor would work with the employee and the reasonable accommodation team to

accommodate, if possible, that employee." (Beidelschies Dep. 24:8-11, ECF No. 31-3 at 62.) This is the incorrect legal standard. When, as in this case, the employer has granted a reasonable accommodation, "the question becomes instead whether it was reasonable … to withdraw that existing accommodation." *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725, 734 (N.D. Ill. 2014).

The record in this case shows that defendant did not consider whether it would be reasonable to rescind the reasonable accommodation it had granted to plaintiff. The VA did not assess the impact of door closings on any of its disabled employees when it decided to close particular entrance doors. This action deprived plaintiff of his reasonable accommodation and violated the Rehabilitation Act. The district court therefore erred in denying plaintiff's motion for summary judgment. The Court should therefore reverse and remand with instructions to grant judgment in favor of plaintiff on liability and to set the case for a trial on damages.

### C. The District Court Erred in Requiring Plaintiff to Present Evidence of a "Significant Risk" to Defeat Summary Judgment

Plaintiff rejected the accommodation proposed by defendant because it did not include a way to safely secure his motorized scooter. The district court held that plaintiff was required to show "a significant risk" that his motorized scooter would be stolen if stored overnight in the non-locked

storage space offered by defendant. "Significant risk" has no place in summary judgment proceedings.

Defendant did not present any evidence to dispute plaintiff's rational and sincere belief that his motorized scooter could easily be stolen if it was not stored overnight in a locked room. Nor did defendant dispute that plaintiff's motorized scooter would be easily disassembled and placed into the trunk of any car. As in *McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024), this evidence "is sufficient to defeat summary judgment." *Id.* at 823-24. Plaintiff offered evidence that property had been stolen at the VA Hospital before. Plaintiff based his fear of someone stealing his scooter on his experiences during the 11 years he worked at the VA. (Short Appendix 1.)

Defendant countered plaintiff's evidence with testimony that two other VA employees stored their larger, and not easily disassembled scooters, in the area it offered to plaintiff. But plaintiff explained why this testimony did not apply to his smaller scooter, which was "so easy to steal … just take it apart and throw it in the trunk of any car." (Bourke Dep. 50:10-12, ECF No. 31-2 at 53.)

The factual dispute about the reasonableness of the proposed accommodation should have been resolved by a jury, rather than by summary judgment.

## VI.    Conclusion

For the reasons above stated, the Court should reverse the order granting summary judgment and remand for trial on damages or, in the alternative, .

Respectfully submitted,

/s/   <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
Joel A. Flaxman
200 S Michigan Ave, Ste 201
Chicago, IL 60604
(312) 427-3200

*Attorneys for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

The undersigned, attorney for Plaintiff-Appellant, certifies that the foregoing brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a). The brief contains 3,862 words, as counted by the word-counting application of Microsoft Word 365.

/s/ <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
*an attorney for plaintiff-appellant*

## TABLE OF CONTENTS

Order on cross-motions for summary judgment, June 11, 2024 .................... 1

Judgment Order, June 11, 2024 ....................................................... 12

## Circuit Rule 30 Statement

The undersigned hereby certifies that all the materials required by parts (a) and (b) of Circuit Rule 30 are contained in the following short appendix.

/s/  <u>Kenneth N. Flaxman</u>
Kenneth N. Flaxman
*an attorney for plaintiff-appellant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DAVID P. BOURKE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 22 C 3164** |
| ) | |
| **DENIS RICHARD MCDONOUGH,** ) | |
| **Secretary, U.S. Department of** ) | |
| **Veterans Affairs,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

David Bourke, an employee of the U.S. Department of Veterans Affairs, filed this suit against Denis McDonough in his official capacity as the Secretary of Veterans Affairs (VA). Bourke alleges that the VA violated the Rehabilitation Act's nondiscrimination provision, 29 U.S.C § 794, by failing to provide him with a reasonable accommodation for his disability. The parties have filed cross-motions for summary judgment. For the following reasons, the Court grants summary judgment in favor of the defendant.

**Background**

The following facts are undisputed for purposes of the cross-motions for summary judgment unless otherwise noted. Bourke is a U.S. Navy veteran and has been employed by the VA since October 2009 at the Edward Hines Jr. VA Hospital in Hines, Illinois. As a result of various medical conditions, Bourke's ability to walk, even

with the assistance of a walker or cane, is limited.  To get around, he uses a motorized scooter.  The scooter can be taken apart so that it can be moved or stored.  Some of the pieces, however, weigh approximately 40 pounds and are too heavy for Bourke to lift on his own.

During the relevant time period, Bourke was assigned to a work station in the basement of Building 200 on the Hines campus.  The closest entrance to his work station was the outpatient pharmacy entrance at the rear of Building 200.  In August 2019, the VA granted Bourke's request for a reserved parking space behind Building 200, along with a sign designating it as "reserved parking," as a "reasonable accommodation" for Bourke's disability.  Pls.' Stmt. of Material Facts ¶ 9–10. This spot was the closest parking spot to Bourke's work station.  Because the scooter was too heavy for Bourke to load and unload into his car each day, he requested the installation of an electric lift in his car through his veterans' benefits.  In the meantime, Bourke stored his scooter overnight at Hines so that he could use it throughout the work day without having to load and unload it every day.  Each morning, Bourke would park his car in his reserved parking spot, walk to the pharmacy entrance, and take the elevator down to the basement, where he would retrieve his scooter.  The parties dispute whether Bourke simply parked the scooter in a corner near his work station or whether he stored the scooter in a "locked office."  *See* Def.'s Resp. to Pl.'s Stmt. of Material Facts ¶ 11.  At the end of his shift, Bourke would park his scooter in the same spot, take the elevator to the main floor, and walk to his reserved parking spot.  This routine was an acceptable accommodation from Bourke's perspective, at least while he awaited the installation of the electric lift for his car.

On March 12, 2020, the VA sent an e-mail to all Hines employees informing them that, in response to the COVID-19 pandemic, the VA would require all Hines employees and visitors to enter the facility through designated entry points so that they could be screened for COVID-19 symptoms each day beginning on March 16, 2020.  The e-mail provided a list of "designated access points" that all Hines employees could use.  For Building 200, there were two designated access points: the "Main Entrance Lobby," which would be accessible from 6:00 am to 10:00 pm, and the "Emergency Room Entrance," which would be accessible 24/7.  Def.'s Stmt. of Material Facts, Ex. 15 at 1–2.  All other entrances to Building 200 would be closed beginning March 16, 2020, including the pharmacy entrance that Bourke routinely used.

On March 13, 2020, Bourke e-mailed Eric Ousley, the Deputy Chief of the VA Police Department, regarding the planned closure of the pharmacy entrance.  Bourke wrote, in relevant part:

> I enter Bldg. 200 at the back by outpatient pharmacy due to my Hines VA reasonable accommodation requires I park in spot #1011.  I need entry by this entrance due to my disabilities and cannot walk very far.  I usually arrive at the back of Bldg. 200 around 5:00am to 5:15am.  Is this entry open at 5:00am?  Please contact me and about entry by this designated parking spot I have.  I spoke with Major McFields [of the VA Police Department] on my lunch and he told me to call (708)2022013 upon my arriving at the back of Bldg. 200 and someone will have to open up this door so I can enter?  If this [is] the course you want me to use please call or email about this issue. [. . .]

Pl.'s App., Ex. 1.  Although the parties appear to disagree over the exact details, it is undisputed that Bourke continued to use the pharmacy entrance after the restrictions went in effect on March 16, despite the fact that it was not a designated access point as specified in the VA's March 12 announcement.  *See* Pl.'s Reply to Def.'s Mot. for Summ. J. at 2; Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 28.  Bourke would then go down to

the basement, retrieve his scooter, and ride on his scooter through the facility to one of the designated access points to be screened.  In other words, for the first two months of COVID-related restrictions, Bourke's accommodation continued to work more or less the way it had before.

About two months later, on May 14, 2020, a Hines administrator instructed the VA Police to lock the pharmacy entrance in response to a complaint that employees were entering via that entrance without undergoing the required screening.  Bourke therefore was unable to use that entrance that morning.  That same day, Bourke spoke with and e-mailed Deputy Chief Ousley and Shawn Schrier, the Local Reasonable Accommodation Coordinator, about the issue.  Bourke's e-mail stated, in relevant part:

> I have spoken to the both of you this morning Thursday 5/14/20, about having HR and Hines police, help me in obtaining a new reasonable accommodation parking spot due to my disabilities causing hardship and pain in walking. My disabilities severely limit my ability to ambulate any distance. I [am] hoping the Hines police and Hines human resources, can work together and quickly get a new reserved parking spot assigned to me until the back of Bldg. 200 is opened up again for entrance? I don't know of any area room or closet, in the [Emergency] department, where I could lock up my electric scooter safely and have a key to access it when needed? I understand the agreement I had, was rescinded and I understand why, but this still doesn't help me accessing my place of employment (Hines VA hospital ASU, Bldg. 200 basement room B 019[)]. I will be forced to park out front, which will require me to try and walk a greater distance to my duty area with-in the hospital. The point of this email is to promote communication between the Hines police and Hines human resources in obtaining the closest handicap parking spot available (ASAP) to my duty station location.  Please help me in re-obtaining my already awarded reasonable accommodation parking spot, and if possible find-locate a locked room-closet (which I will have my own key) for the safe keeping of my scooter up front by the Hines ED. [. . .]

Def.'s Stmt. of Material Facts, Ex. 16.  That same day, Hines staff began looking into the situation.  For example, after receiving the e-mail, Christopher Wirtjes, the chief of Bourke's unit, stated in an internal e-mail that same day:  "This is first that I have heard

of this concern.  I will reach out to the supervisor and see what has been done to assist this employee."  Def.'s Stmt. of Material Facts, Ex. 18 at 3.

Schrier and Angela Graham, who was Bourke's immediate supervisor, began looking for options that would accommodate Bourke.  On May 15, 2020, they "considered Bourke's request that he be assigned the first handicapped parking space near the entrance to the ER."  Pls.' Resp. to Def.'s Stmt. of Material Facts ¶ 36.  But "[w]hile Graham was able to identify a wall in the ER waiting area with an outlet for charging, there was no secure space for Bourke to store his scooter near the ER or main entrances."  *Id.* ¶ 37.  "Additionally, Wirtjes, Graham's chief, did not believe he could get authorization for Bourke to leave his scooter in the area of the ER entrance because it was a 'high traffic area on off tour [ ]' hours when Bourke would need to store his scooter there."  *Id. ¶ 38.*  There were also concerns that assigning the public handicap spot to a single individual would decrease the handicap parking available for patients entering the ER and that, even if it were assigned to Bourke, the VA police would have difficulty preventing people from improperly parking in the reserved space.

Instead, the VA ultimately identified a parking spot in front of the "Building 1, Section C" as the proposed reasonable accommodation.  *Id.* ¶ 50.  Inside this building, there was a "Patient Advocate Department" area where two other employees—Graham and a doctor—had been storing their own mobility scooters in response to the COVID-19 restrictions.  The Patient Advocate Department space was not a "dedicated, locked room" for Bourke's scooter.  *Id.* ¶ 44.  However, it "was outside of the public view and common areas, was near the VA Police Department, and was not a space with after-hours traffic."  *Id.*  Nevertheless, Bourke did not believe that his scooter could be safely

stored in the Patient Advocate space because unlike the "larger scooters" used by Graham and the doctor, Bourke's scooter was "easy to steal" because it was a "go-go scooter, which is one that can [be broken down] and fit in the trunk of a car." *Id.* ¶ 43. Bourke also expressed concern to Graham that the Building 1, Section C entrance would not be open for screening at 5:00 a.m. when he typically arrived for his 6:00 a.m. shift. Graham communicated this concern to Wirtjes, who replied in an e-mail:

> Doors are scheduled to be open at 5. Why does he need to be at work an hour early? I may not have the whole story, but I am trying to find what is not reasonable about this. From your perspective, what do you think?

Def.'s Stmt. of Material Facts, Ex. 19. Graham replied that the temporary spot in front of Building 1, Section C would "allow for better parking, screening and less walking to access his scooter." *Id.*

On May 18, 2020, Graham offered Bourke the reserved parking spot in front of Building 1, Section C. Schierer e-mailed the Engineering Department that same day to request a "rush installation of a reserved parking spot" sign at that location. Def.'s Stmt. of Material Facts, Ex. 20.

"On June 3, 2020, after meeting with Graham, Bourke declined the offered temporary reasonable accommodation 'for safety concerns for the secure storage of my equipment.'" *Id.* ¶ 51. Afterwards, Bourke sent the following e-mail to Graham:

> Per our conversation today, I will continue to park by Bldg. 228 handicap spot and enter into my work station ASU basement of Bldg. 200, in order to leave my scooter in a locked-secure area at my work station. The added distance and ambulation and subsequent pain, will be endured for safety concerns for the secure storage of my equipment. I will await the opening of the back of Bldg. 200 (outpatient pharmacy) to park in my RA assigned parking area #1011. Why the 16 or so handicap parking areas behind Bldg. 200, which are close to entry and convenient, are still denied access for Veterans to utilize[ ], makes no sense what-so-ever?

Def.'s Stmt. of Material Facts, Ex. 21.

On June 29, 2020—about one and one-half months after Bourke's arrangements were changed—the pharmacy entrance re-opened and he was able to resume using his original reserved parking space.  That same day, Bourke filed a formal complaint with the VA's equal employment opportunity office.  After a hearing before the Equal Employment Opportunity Commission, an Administrative Judge "concluded that the VA offered Bourke an effective accommodation but that Bourke ceased participating in the interactive process when he declined to accept the offer and refused to consider any alternative to his accommodation of choice."  Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 57.  The VA's EEO office adopted the AJ's decision.  After exhausting his administrative remedies, Bourke filed this lawsuit, alleging that the VA violated the Rehabilitation Act by "unilaterally rescinding" his reasonable accommodation and "requir[ing] [him] to use a parking space across from Building 228 that was about three-quarters of a mile from his work-place."  Compl. ¶ 9, 12.

### Discussion

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court must "construe all facts and draw all inferences in the light most favorable to the non-moving party."  *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 459 (7th Cir. 2021).

"The Rehabilitation Act requires a federal employer to reasonably accommodate the known physical and mental disabilities of a qualified employee."  *McCray v. Wilkie*, 966 F.3d 616, 620–21 (7th Cir. 2020).  "The Rehabilitation Act incorporates the

standards of the Americans with Disabilities Act in determining whether an employer has discriminated against its employee, and so [courts] look to cases decided under both statutes in evaluating an employer's compliance with this duty." *Id.* at 621.  To survive summary judgment on a failure-to-accommodate claim under the Rehabilitation Act or the ADA, a plaintiff must "present evidence that, if believed by a trier of fact, would show that she is a qualified individual with a disability, that the [defendant] was aware of her disability, and that the [defendant] failed to reasonably accommodate the disability." *King v. City of Madison*, 550 F.3d 598, 600 (7th Cir. 2008).  For purposes of the parties' cross-motions for summary judgment, the VA does not dispute that Bourke was a qualified individual or that it was aware of Bourke's disability.  Thus, the only disputed question is whether the VA "failed to reasonably accommodate the disability." *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (2013).

## A.    Whether the VA must show that permitting Bourke to enter through the pharmacy entrance caused undue hardship

Bourke argues that, although the VA originally accommodated his disability by providing him a reserved parking spot behind Building 200, it "unilaterally rescind[ed]" that reasonable accommodation.  Pl.'s Cross-Mot. for Summ. J. at 6.  He argues that the Rehabilitation Act prohibits the VA from rescinding a reasonable accommodation unless it can show that the accommodation causes an "undue hardship." *Id.*

Bourke cites to *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002), for the proposition that, once a plaintiff has made a showing that "an 'accommodation' seems reasonable on its face, . . . the defendant/employer then must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances."  The issue with Bourke's argument, however, is that *Barnett* addressed

a situation in which the employer declined to provide *any* reasonable accommodation. *See id.* at 395 (stating that the defendant airline "decided not to make an exception" to its seniority system for certain preferred assignments to accommodate the disabled plaintiff's physical limitations, resulting in the plaintiff losing his job). Under those circumstances, Bourke is correct that the employer must show that a reasonable accommodation proposed by an employee would impose an undue hardship. *See* 42 U.S.C. § 12112(b)(5)(A) (employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business").

But this does not mean that an employer is required to demonstrate undue hardship any time that it rejects an employee's preferred accommodation and instead provides an alternative reasonable accommodation. To the contrary, the Seventh Circuit has long held that "[i]t is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000); *see also EEOC v. Charter Commc'ns, LLC*, 75 F.4th 729, 742 (7th Cir. 2023) ("We also emphasize that the employer need not provide the exact accommodation the employee asks for, which we have said repeatedly."). Bourke provides no authority for the proposition that an employer cannot alter the reasonable accommodations it provides to an employee in response to changing circumstances. Such a rule would be in tension with Seventh Circuit precedent emphasizing an employer's discretion to choose among reasonable accommodations.

Thus, even if the Court views the VA's actions as rescinding Bourke's original reasonable accommodation, the VA must show undue hardship only if it provided no alternative reasonable accommodation.  The Court concludes that Bourke has not pointed to evidence that would permit a reasonable jury to find that the VA did not promptly provide an alternative reasonable accommodation.  First, it is undisputed that, one day after the VA's March 12 e-mail informing all employees about the upcoming COVID-19 entry restrictions, Bourke contacted and arranged an agreement with the VA Police to continue using the pharmacy entrance.  *See* Pl.'s Cross-Mot. for Summ. J. at 7–8 ("[Deputy Chief] Ousley agreed to plaintiff's requested accommodation and gave plaintiff permission to enter through the pharmacy entrance on the understanding that he 'will continue to be screened every day.'").  It is also undisputed that, after the VA locked that entrance on May 14 in response to an employee complaint, the VA began searching for an alternative accommodation for Bourke that same day.  The Building 1, Section C entrance was floated as an idea to Bourke by the next day (May 15), and it was formally offered to him on May 18.  Thus, as long as the Building 1, Section C solution was a "reasonable accommodation"—an issue the Court will discuss below— Bourke cannot say that the VA denied him a reasonable accommodation so as to trigger the undue-hardship analysis.  Rather, Bourke can at best say that the VA switched from providing one accommodation to another.  As discussed, the Rehabilitation Act does not require courts to "disturb [the employer's] chosen method of accommodation" as long as the accommodation is reasonable.  *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 577 (7th Cir. 2001).

The parties dispute the extent to which the VA acted unilaterally as opposed to

engaging in an "interactive process" with Bourke, as it is required to do under ADA regulations. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005). Viewing the evidence in the light most favorable to Bourke, it is true that the VA acted unilaterally in restricting access to the pharmacy entrance. It is also true that Bourke, and not the VA, initiated the reasonable-accommodation process in response to the VA's unilateral actions. In other words, the VA did not proactively consult Bourke about the closing of the pharmacy entrance before March 16 (the date the entrance policy went into effect) or May 14 (the date that Bourke was locked out). But that fact alone is not sufficient to show a violation of the Rehabilitation Act. "[T]here is no independent cause of action for breakdown of the interactive process under the ADA. Liability arises from these types of allegations only when 'the employer's failure to engage in an interactive process resulted in a failure to identify an appropriate accommodation for the qualified individual.'" *Igasaki v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021) (internal citation omitted); *see also Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000) ("The ADA seeks to ensure that qualified individuals are accommodated in the workplace, not to punish employers who, despite their failure to engage in an interactive process, have made reasonable accommodations."). The Seventh Circuit has instructed that "[i]n this area of the law," courts should focus on "the ends, not the means." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014).

Finally, Bourke argues that the VA's unilateral decisions regarding the pharmacy entrance violated various provisions of the VA Handbook. But an employer's internal policies do not alter the minimum requirements of the Rehabilitation Act. It is well established that an employer's policies and practices "may well go above and beyond

what the [Act] requires" and that the employer need not "continue to go beyond the [Act's] requirements" to avoid future liability.  *Tate v. Dart*, 51 F.4th 789, 800 (7th Cir. 2022).  Bourke therefore has not shown how the VA's alleged violation of its internal Handbook tends to show that the VA failed to provide a reasonable accommodation for purposes of his Rehabilitation Act claim.

With these principles in mind, the Court addresses the remaining question: whether the VA offered Bourke a reasonable accommodation.

**B.     Whether the Building 1, Section C accommodation was reasonable**

The VA argues that no reasonable jury could find that its proposed accommodation—that Bourke park in a reserved space in front of the Building 1, Section C entrance and store his scooter inside the Patient Advocate Department space—was unreasonable.  Bourke argues that the accommodation was not reasonable because "Building 1 was far from his work area and did not provide a place for plaintiff to safely secure his scooter."  Pl.'s Cross-Mot. for Summ. J. at 5.  The Court will address each issue in turn.

**1.     Distance**

First, the Court concludes that Bourke has not provided any evidence that would permit a reasonable jury to conclude that the proposed accommodation was unreasonable because the distance he was required to walk was too far.  The VA's evidence suggests that its proposed accommodation minimized the amount of walking that would be required between the proposed reserved parking spot directly in front of Building 1 and the proposed storage spot inside the Patient Advocate space inside that building.  To dispute this evidence, Bourke points to his deposition testimony where he

stated that Building 1 was "way, way too far away from [his] work station." Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 47. But the fact that Building 1 was far away from his *work station* says nothing about the distance between the proposed parking spot and the Patient Advocate space, where Bourke could then board his scooter to reach his work station.

Bourke also argues that "[n]o one measured the distance plaintiff would have been required to walk" between the proposed parking space and the Patient Advocate space. Pl.'s Cross-Mot. for Summ. J. at 13. But it is Bourke's burden, as the plaintiff, to provide evidence that the distance was unreasonable. *See King*, 550 F.3d at 600.

Bourke next cites to the fact that in December 2020 a VA facility planner measured the distance between a different parking spot and a different secured storage area in a different building and found it was "pushing the 40-50 ft distance marker for the [reasonable accommodation]." Pl.'s Cross-Mot. for Summ. J. at 13. The Court cannot see, and Bourke does not explain, how this has any relevance to the distance between the parking spot and scooter storage space proposed several months earlier in May 2020.

Bourke also cites to an e-mail sent by Graham that stated that Bourke "will need assistance with getting to his car." Pl.'s Cross-Mot. for Summ. J. at 12. The VA argues that, read in context, Graham meant only that he would need assistance *on the day* of the transition (because if he got off and stored his scooter in Building 1, Section C, he would not be able to walk to his car parked in his old spot behind the pharmacy entrance of Building 200). Even if the court credits Bourke's interpretation of the e-mail, however, he does not explain why the fact that the VA would need to assist him in

getting to his car would permit a reasonable factfinder to find that the proposed accommodation is unreasonable.  In other words, there is nothing patently unreasonable about a proposed accommodation in which Bourke would park his scooter and then get VA assistance to reach his car parked in a reserved spot.

Finally, nothing in the record suggests that Bourke ever communicated to the VA that he was rejecting the proposed accommodation due to the distance he would be required to walk between the reserved parking spot and the scooter storage area.  To the contrary, in an e-mail to VA staff, Bourke stated that he was rejecting the proposed accommodation "for safety concerns for the secure storage of my equipment."  Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 51.  Although Bourke testified in his deposition that he complained to Graham that the Building 1, Section C entrance as too far from his work station, as the Court has discussed, that is not evidence that Bourke informed the VA that the distance he was required to walk was too lengthy.  Furthermore, Bourke testified that he would have accepted the Building 1, Section C accommodation if the VA had provided him with a locked closet in which to store his scooter (an issue that the Court will discuss next).  "If a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process."  *Sears, Roebuck & Co.*, 417 F.3d at 797.  Thus, even if Bourke had provided evidence that the VA's proposed accommodation was unreasonable because it required him to walk too far, the VA would not be liable under a failure-to-accommodate theory for an issue that Bourke never hinted at despite a clear opportunity to do so.

### 2.    Security

Bourke also argues that the accommodation was unreasonable because the VA did not offer him a dedicated, locked storage space for his scooter.  Bourke, however, does not deny that the "[w]hile the Patient Advocate Department space did not offer a dedicated, locked room for Bourke to store his scooter, the Patient Advocate space was outside of the public view and common areas, was near the VA Police Department, and was not a space with after-hours traffic."  Pl.'s Resp. to Def.'s Stmt. of Material Facts ¶ 44.  In addition, Bourke does not dispute that Graham and another VA employee had been parking their scooters in the Patient Advocate space overnight and on weekends without incident after the implementation of the COVID-19 restrictions.  Nevertheless, Bourke argues that his scooter was easier to steal because it could be taken apart to fit in the trunk of a car; therefore the VA was required to provide him with a dedicated locked storage space.

Again, however, the Rehabilitation Act does not require the VA "to provide the particular accommodation that [Bourke] requested." *Jay*, 233 F.3d at 1017.  Although Bourke testified during his deposition to hearing that someone had stolen a scooter in another part of the hospital, there is no evidence that there was a significant risk that someone would steal and disassemble Bourke's scooter from the non-public-facing Patient Advocate space.  Under these circumstances, Bourke's speculative concerns that his scooter might be stolen are not sufficient to create a genuine dispute over whether the VA's proposed storage space was a reasonable accommodation.

In sum, the Court concludes that Bourke has not carried his burden at summary judgment of "present[ing] evidence that, if believed by a trier of fact, would show that

. . . the [VA] failed to reasonably accommodate [his] disability." *King*, 550 F.3d 598, 600

(7th Cir. 2008).  The Secretary of the VA therefore is entitled to summary judgment on

his claim under the Rehabilitation Act.

### Conclusion

For the reasons stated above, the Court grants the defendant's motion for

summary judgment [dkt. no. 29] and denies Bourke's cross-motion for summary

judgment [dkt. no. 34].

MATTHEW F. KENNELLY
United States District Judge

Date:  June 11, 2024

ILND 450 (Rev. 04/29/2016) Judgment in a Civil Action

## IN THE UNITED STATES DISTRICT COURT
### FOR THE
### NORTHERN DISTRICT OF ILLINOIS

David P. Bourke,

Plaintiff(s),

v.

Denis Richard McDonough, Secretary, U.

Defendant(s).

Case No. 22 C 3164
Judge Matthew F. Kennelly

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐     in favor of plaintiff(s)
and against defendant(s)
in the amount of $

which ☐ includes        pre–judgment interest.
☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐     in favor of defendant(s)
and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☑     other: The Court grants the defendant's motion for summary judgment [dkt. no. 29] and denies Bourke's cross-motion for summary judgment [dkt. no. 34].

---

This action was *(check one)*:

☐ tried by a jury with Judge                          presiding, and the jury has rendered a verdict.
☐ tried by Judge                          without a jury and the above decision was reached.
☑ decided by Judge Matthew F. Kennelly          on a motion .

Date: 6/11/2024                    Thomas G. Bruton, Clerk of Court

Melissa Astell            Deputy Clerk