In the
UNITED STATES COURT OF APPEALS
for the Seventh Circuit

No. 24-2221

DAVID P. BOURKE,

Plaintiff-Appellant,

v.

DOUGLAS A. COLLINS, Secretary of
the U.S. Department of Veterans Affairs,

Defendant-Appellee.

On Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 22 C 3164, Matthew F. Kennelly, *Judge*.

BRIEF OF THE DEPARTMENT OF VETERANS AFFAIRS

MORRIS PASQUAL
Acting United States Attorney
 for the Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604

THOMAS P. WALSH
Assistant United States Attorney
Civil Division Chief

NICOLE FLORES
Assistant United States Attorney
(312) 886-9082

## Table of Contents

Jurisdictional Statement .................................................................... 1

Issue Presented for Review ................................................................ 1

Statement of the Case ...................................................................... 2

    1.    Background ......................................................................... 2

    2.    The VA's COVID-19 Screening Procedures ............................. 3

    3.    Bourke's First (Informal) Temporary Accommodation ......................... 4

    4.    The VA's Second Offered Temporary Accommodation ........................... 6

    5.    Bourke's Lawsuit .................................................................. 10

    6.    The District Court Decision ..................................................... 11

Summary of Argument .................................................................... 12

Argument .................................................................................... 14

    I.    Standard of Review ............................................................... 14

    II.    The VA Fulfilled Its Obligations under the Rehabilitation Act. .......... 14

    III.    The VA Offered Bourke a Reasonable Temporary Accommodation . .. 16

        A.  The Temporary Accommodation Offered by the VA
            Was Reasonable ............................................................. 17

        B. The VA Lawfully (and Temporarily) Altered Bourke's
            Accommodation Based on Changed Circumstances ...................... 20

           i.   This Court Should Reject Bourke's Invitation to Shift the
               Burden to the VA ....................................................... 23

           ii.  Bourke Failed to Present Evidence that the New Temporary
               Scooter Storage Was Not Secure ...................................... 27

Conclusion .................................................................................. 30

Certificate of Service

# Table of Authorities

## Cases

*Bilinsky v. American Airlines, Inc.*, 928 F.3d 565 (7th Cir. 2019) ...................... 23, 24

*Bunn v. Khoury Enters., Inc.*, 753 F.3d 676 (7th Cir. 2014) ...................................... 22

*Cloe v. City of Indianapolis*, 712 F.3d 1171 (7th Cir. 2013) ...................................... 21

*Crain v. McDonough*, 63 F.4th 585 (7th Cir. 2023) .................................................... 14

*EEOC v. Charter Commc'ns, LLC*, 75 F.4th 729 (7th Cir. 2023) ...................... 21, 28

*EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789 (7th Cir. 2005) ............................. 15, 16

*EEOC v. United Airlines, Inc.*, 693 F.3d 760 (7th Cir. 2012) ............................. 16, 28

*Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) ...................................... 27

*Hooper v. Proctor Health Care, Inc.*, 804 F.3d 846 (7th Cir. 2015) ........................... 14

*Hoppe v. Lewis Univ.*, 692 F.3d 833 (7th Cir. 2012) .................................................... 15

*Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948
    (7th Cir. 2021) ................................................................................. 15, 19, 20, 21

*Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725 (N.D. Ill. 2014) ........................... 24, 25

*Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014 (7th Cir. 2000) .............................. 15, 21

*Kassa v. Synovus Fin. Corp.*, 800 F. App'x 804 (11th Cir. 2020) ........................ 26, 27

*Mays v. Principi*, 301 F.3d 866 (7th Cir. 2002) .................................................... 16, 28

*McDaniel v. Syed*, 115 F.4th 805 (7th Cir. 2024) ................................................. 19, 20

*Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) ...................................... 21

*Ozlowski v. Henderson*, 237 F.3d 837 (7th Cir. 2001) ............................................... 15

*Paulsen v. Abbott Lab'ys*, 39 F.4th 473 (7th Cir. 2022) ............................................. 14

*Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806 (7th Cir. 2015) .............. 14

*Rehling v. City of Chicago*, 207 F.3d 1009 (7th Cir. 2000).................................. 16, 22

*Riley v. City of Kokomo*, 909 F.3d 182 (7th Cir. 2018) ........................................ 19, 20

*US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002) ................................. 21, 27, 28

*Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743 (7th Cir. 2012)17, 26

*Willis v. Conopco, Inc.*, 108 F.3d 282 (11th Cir. 1997) ............................................. 27

## Regulations

28 U.S.C. § 1291................................................................................................ 1

29 U.S.C. § 794a(a) ........................................................................................... 1

## Rules

Fed. R. App. P. 4(a)(1)(B)(i) ........................................................................... 1

## Jurisdictional Statement

Appellant David Bourke's jurisdictional statement is not complete and correct. Accordingly, appellee Douglas A. Collins,[1] Secretary of the United States Department of Veterans Affairs, provides the following jurisdictional statement pursuant to Circuit Rule 28(b).

Plaintiff-appellant David Bourke sued his former employer, the Department of Veterans Affairs, alleging failure to accommodate a disability. R. 1.[2] The district court had jurisdiction under the Rehabilitation Act, 29 U.S.C. § 794a(a). The district court granted summary judgment in favor of the VA, denied Bourke's motion for summary judgment, and entered final judgment on the district court docket on June 11, 2024. R. 47, 48; Bourke Short App. at 1–17. No post-judgment motion was filed. Bourke filed a notice of appeal on July 9, 2024, within the 60 days allowed by Fed. R. App. P. 4(a)(1)(B)(i). R. 49. This court has jurisdiction under 28 U.S.C. § 1291 to review the district court's final decision.

## Issue Presented for Review

Whether the district court correctly found that Bourke did not present evidence from which a reasonable jury could conclude that the VA failed to reasonably accommodate his disability.

---

[1] Douglas A. Collins is the current Secretary of Veterans Affairs and is automatically substituted as defendant-appellee by virtue of Fed. R. App. P. 43(c)(2).

[2] "R." references are to numbered items in the Record on Appeal.

1

**Statement of the Case**

## 1.    Background

David Bourke is a former advanced medical support assistant in the VA's Patient Administration Services ("PAS") at the Edward Hines, Jr. Hospital ("Hines"). R. 31 (VA Stat. of Facts), Ex. 4.[3]  During the relevant time, Bourke was working in the Ambulatory Surgery Unit ("ASU") in the basement of the main hospital building at Hines, Building 200.  *Id.*  His first-line supervisor was Angela Graham, and Christopher Wirtjes was the chief of PAS.  *Id.*, Ex. 5 at 5–6; Ex. 6 at 5.  Bourke, who is a veteran and has mobility limitations, worked with his VA healthcare providers to obtain a powered mobility scooter.  *Id.*, Ex. 2 at 21–23; Ex. 3.  Bourke used the scooter exclusively at work even though it was his personal property, not a reasonable accommodation.  *Id.*, Ex. 2 at 23–24.

In 2019, Bourke requested and was assigned a reasonable accommodation parking space to minimize his walking.  *Id.*, Ex. 4, Ex. 7, Ex. 10, Ex. 11 at 8–9.  The VA's process for requesting a reasonable accommodation involves the employee informing their supervisor, a manager, or the local reasonable accommodation coordinator (LRAC) of their need for an accommodation and participating collaboratively in an interactive process.  *Id.*, Ex. 8 at USA000555.  As expeditiously as possible, a designated management official works with the LRAC to make a final

---

[3] The VA's Local Rule 56.1 Statement of Facts, R. 31, Exhibits 1–10 are located in the Record on Appeal at R. 31-2; Exhibits 11–20 are located at R. 31-3; and Exhibits 21–30 are located at R. 31-4.  The VA's Response to Plaintiff's Local Rule 56.1 Statement of Facts, R. 44, Exhibits 31–35 are located at R. 44-1.  Bourke's responsive Local Rule 56.1 Statement is located at R. 35.

decision on accommodation of the employee, considering alternative effective accommodations as necessary. *Id*. at USA000552-53, USA000559. If requested, the employee is expected to provide information from their healthcare provider. *Id*. at USA000555. This is the process that Bourke utilized in requesting a parking space (along with another accommodation that was also granted but is not at issue in this case). *Id*., Ex. 4, Ex. 7, Ex. 10.

Bourke's reasonable accommodation parking space was near the Hines outpatient pharmacy entrance to Building 200. *Id*., Ex. 11. The Ambulatory Surgery Unit clinical manager allowed Bourke to store his scooter near his workstation in the ASU to charge overnight. *Id*., Ex. 2 at 34–35. At the time, Bourke's routine consisted of parking his vehicle in his reserved parking space, walking to the entrance at the rear of Building 200 (near the outpatient pharmacy), taking an elevator down to the basement, and retrieving his scooter from where he had left it near his workstation. *Id*., Ex. 2 at 36. Though he primarily used his scooter at work, he also often regularly walked with a cane during the workday. *Id*., Ex. 5 at 40–42, 47.

## 2. The VA's COVID-19 Screening Procedures

The above arrangement worked well for Bourke until his routine was temporarily disrupted by the COVID-19 pandemic. In mid-March 2020, a time with limited testing and prior to any vaccines, the VA instructed all VA facilities nation-wide, including Hines, to implement screening procedures to help protect veteran patients and VA employees. *Id*., Ex. 14 at 6. Over the course of a weekend, Hines leadership had to determine how to implement the VA-mandated screening procedures over the vast, 147-acre medical campus despite limited access to staff and

personal protective equipment (PPE). *Id*. at 6, 8. The Hines incident command structure (consisting of executive leadership, clinical and administrative leadership, and subject matter experts) convened to determine where to stand up active screening locations based on the limited staff available to screen patients and staff, the limited quantity of thermal handheld thermometers and PPE, and proximity to private rooms for secondary screening. *Id*. at 7–11, 12–13, 27–28.

Due to these limiting factors, the incident command understood that they would have to close most entrances *and* that the entrance closures would impact some employees with reasonable accommodations. *Id*. at 8–9, 20, 21. However, the incident command also expected that the affected employees would work with their supervisors and/or the LRAC to re-engage the interactive process as necessary. *Id*. at 21–22, 24. And so, on March 12, 2020, Hines leadership notified all employees that starting on March 16, 2020, they would "be required to enter through designated entry points" for screening. *Id*., Ex. 15. That same email provided a list of entrances that would be open and staffed for screening. *Id*.

### 3. Bourke's First (Informal) Temporary Accommodation

As it turned out, Bourke's usual entrance at the rear of Building 200 was *not* one of the designated entrances. *Id*. However, from mid-March 2020, until May 14, 2020, Bourke continued to access his workplace and scooter via that undesignated entrance without first being screened. *Id*., Ex. 2 at 37–38, 70. Shortly after the March 12, 2020, email announcing the screening procedures and door closures, Bourke spoke to the VA police about the closure of the door at the rear of Building 200 and his access to his reasonable accommodation parking space. *Id*., Ex. 2 at 38; Ex. 17 at 6–

7.  Following this conversation, Bourke continued to access his scooter via the unauthorized entrance at the rear of Building 200 and, in the process, skirted the VA screening procedures for about two months.[4]  *Id.*, Ex. 2 at 41–42, 70.

Despite being familiar with and having utilized the VA's reasonable accommodation process just months prior to the March door closure (*id.*, Ex. 2 at 36; Ex. 4, Ex. 10), Bourke did not alert his supervisor or the LRAC that his accommodation parking space had been impacted by the COVID-19 screening procedures.  *Id.*, Ex. 5 at 12; Ex. 9 at 6, 11–12.  Instead, Bourke continued his routine as if the VA's mandate that all Hines employees be screened upon entry simply did not apply to him.  So, from mid-March 2020 through May 14, 2020, Bourke would enter the building — not screened — from the unauthorized entrance closest to his original accommodation parking space, access his scooter from the Ambulatory Surgery Unit workspace, and *then* use his scooter to travel through the facility to the

---

[4]  Bourke incorrectly claims to have made an agreement with VA Police Chief Eric Ousley about his continued use of the doors at the rear of Building 200.  Bourke Br. at 5.  However, according to Bourke's own deposition testimony, it was Major Deshaun McField of the VA police who agreed to allow him to access his usual entrance at the rear of Building 200.  R. 31, Ex. 2 at 38, 42.  Major McField's testimony corroborates the fact that he spoke to Bourke in mid-March 2020, but McField testified that he told Bourke that the VA police would allow him to access the rear doors of Building 200 for only a week and that, in the meantime, Bourke would have to pursue a new reasonable accommodation parking space near an open entrance. *Id.*, Ex. 17 at 7.  While the contours of this first, informal, temporary accommodation are disputed, it is immaterial whether and for how long the VA police ostensibly gave Bourke permission to access the entrance at the rear of Building 200.  What is undisputed is that Bourke continued to do so until May 14, 2020.  *Id.*, Ex. 2 at 70; R. 32 at ¶¶28-29.

main or Emergency Department entrances to be screened. *Id.*, Ex. 2 at 41–42, 70; Ex. 9 at 12.

### 4.    The VA's Second Offered Temporary Accommodation

On May 14, 2020, following a complaint from an employee who had observed someone using an unauthorized entrance without screeners, Hines took measures to definitively lock the rear entrance to Building 200. *Id.*, Ex. 2 at 43; Ex. 9 at 11–12; Ex. 16. That same day, Bourke emailed VA Police Chief Eric Ousley and the LRAC, Shawn Scheirer, to request that a "new reasonable accommodation parking spot" be assigned to him "until the back of Bldg. 200 is opened up again." *Id.*, Ex. 16. In his email to Ousley and Scheirer, Bourke requested that the new parking space be near his workstation in the Ambulatory Surgery Unit and that he be provided a locked room or closet in or near the Emergency Department to store his scooter. *Id.*

May 14th was a Thursday, and by the following Monday, May 18, 2020, Bourke, Graham, Wirtjes, and Sheirer had re-engaged the interactive process, meaning that they had begun the process of identifying a new reasonable accommodation parking space that would also allow Bourke to enter the Hines facility via a designated screening entrance and have his scooter nearby to accommodate the limitations on his walking. *Id.*, Ex. 5 at 18–19; Ex. 9 at 8; Ex. 18 at USA000262. As part of the interactive process, Bourke requested that the VA assign him to the "No. 1 spot outside the emergency room" (*id.*, Ex. 2 at 58) and "if possible find-locate a locked room-closet (which I will have my own key) [*sic*] for the safe keeping of my scooter up front by the Hines [Emergency Department]" near the main entrance. *Id.*, Ex. 16 (emphasis removed); *see also id.*, Ex. 2 at 71–72; Ex. 9 at 17, 36.

Hines considered Bourke's request but determined that the request was not reasonable under the circumstances.  For one thing, Bourke had not identified a *specific* area he believed could provide him with secure storage for his scooter. Graham explored the idea, but while she was able to identify a wall in the Emergency Department's waiting room with an outlet for charging, she could not identify a secure storage space.  *Id.*, Ex. 5 at 33, Ex. 19 at USA000228; *see also* Ex. 6 at 19; Ex. 9 at 19–20.  Scheirer also reviewed Bourke's request but determined it to be problematic for several reasons: it would require re-designating an unassigned handicapped spot (available to any disabled visiting veteran or employee) to an individual; there were more steps and trip hazards involved in walking from the parking space to the nearest entrance; and there was no way to secure Bourke's scooter near the main entrance with its constant presence of patients.  *Id.*, Ex. 9 at 17–18, 36.  Finally, as Wirtjes pointed out, not only was the Emergency Department a high-traffic area at all hours, but during the beginning of the COVID-19 pandemic the Emergency Department was "the heart of the intake" for COVID-19 patients and was being constantly rearranged during that period.  *Id.*, Ex. 6 at 18–19; Ex. 19 at USA000228.

As an alternative, Graham proposed that Bourke park near the entrance to Building 1, Section C, where there was an authorized entrance with screening and space to store Bourke's scooter on off hours.  *Id.*, Ex. 5 at 12–13; Ex. 19 at USA000228. Graham, who also uses a scooter at work and has a reasonable accommodation parking space, had been re-accommodated and was parking in a reserved spot at the

7

Building 1, Section C entrance and storing her scooter during her off hours in the Patient Advocate Department near the entrance. *Id.*, Ex. 5 at 10–12. Graham described the storage space as secure, and she testified that she had even left her key in her scooter one night to no ill effect. *Id.* at 11, 13, 24. A VA doctor had also been storing his scooter in the Patient Advocate space during the COVID-19 pandemic. *Id.*, Ex. 5 at 13. And Scheirer had determined that using the Building 1, Section C entrance (with reserved parking space nearby) would result in the shortest distance and fewer tripping hazards, even compared to Bourke's original accommodation. *Id.*, Ex. 9 at 28–29, 36–37.

The Patient Advocate space did not offer *locked* storage, but Graham described it as "secluded" and testified that "no one was in that area at night when we left." *Id.*, Ex. 5 at 24–25. Scheirer testified that there was "very little if any after-hour traffic" in the area of the Patient Advocate Department; it was outside public view and common areas; and it was off the same corridor as the VA police station. *Id.* Ex. 9 at 18, 20. Importantly, unlike the Emergency Department and main entrances, the Building 1, Section C entrance was for employees only and required a government-issued federal employee identification card for entry. *Id.* at 16; *id.*, Ex. 15.

On May 18, 2020, the VA police confirmed that there was a parking spot "directly in front of the C door of building 1" that was not assigned to anyone, and Graham offered the alternate accommodation to Bourke the same day. *Id.*, Ex. 5 at 12; Ex. 18 at USA000262; Ex. 20 at USA000271. The next day Scheirer requested a "rush installation" of a reserved parking space for Bourke at that location. *Id.*, Ex.

8

20 at USA000271. However, on June 3, 2020, Bourke declined the offered accommodation "for safety concerns for the secure storage" for his scooter. *Id.*, Ex. 21.

Then, for a period of about 46 days, Bourke parked in the general handicapped parking at another building and walked much farther to an authorized entranced and then his scooter, which he continued to store in the Ambulatory Surgery Unit workspace. *Id.*; *id.*, Ex. 2 at 59. But on or around June 29, 2020, the rear entrance of Building 200 was reopened and staffed for COVID-19 screening. *Id.*, Ex. 2 at 63–64; Ex. 17 at 29–30; 22 at USA000663–64; R. 32 at ¶ 53. The door at the rear entrance of Building 200 remained open from that date forward, and so Bourke, after about six and a half weeks of using a different entrance, was able to use his original accommodation until he changed positions (and buildings) in late 2022 or early 2023. R. 31, Ex. 2 at 65, 66–67; Ex. 24; R. 32 at ¶ 54.

During the period in which Bourke was parking in general handicapped parking, he testified that he experienced increased right hip pain from the additional walking and that his pain doctor, Dr. Raj Uppal, had to increase his pain medication. *Id.*, Ex. 2 at 76–77. Dr. Uppal testified that he recalled that Bourke had told him that his pain was "a little worse" during the door closures. R. 44, Ex. 35 at 44–45.[5] But Dr. Uppal also testified the pain from walking was temporary because walking relieves stiffness, which in turn improves pain symptoms in patients like Bourke. *Id.* at 44, 46. Dr. Uppal did not testify to increasing Bourke's opioid pain medications,

---

[5] References R. 44, Ex. 35 are to the page numbers of the record filing (in the blue header), as it appears that the transcript page numbers were inadvertently removed in the process of uploading to the docket.

though he observed that Bourke had been taking medications for his pain before he started seeing Dr. Uppal in 2015 or 2016. *See id*. at 27, 31–32.

And during this time period, Dr. Uppal and Graham regularly observed Bourke walking with his cane during the workday, even though he was not required to do so. Dr. Uppal testified that despite being "aggravated" because of pain and additional walking from his car during the door closures, he was also walking with his cane when he escorted patients to pre-operative rooms and family members to recovery rooms. *Id*. at 33–34, 44–45. Similarly, Graham testified that Bourke's job was to check in patients for their appointment, not to escort them. R. 31, Ex. 5 at 42. Yet, Bourke would walk with his cane to escort patients within the Ambulatory Surgery Unit, go to the nurses' offices, and go to areas outside the Ambulatory Surgery Unit. *Id*. at 40–41, 42, 47.

### 5.   Bourke's Lawsuit

After exhausting his administrative remedies, Bourke filed a complaint in district court in June 2022, alleging that the VA had violated the Rehabilitation Act when it "rescinded" his reasonable-accommodation parking space as a result of COVID-19-related door closures. R. 1 at ¶¶9, 12. The parties conducted discovery and took depositions. Bourke had testified that another employee's scooter charger was stolen from a different department (not the Patient Advocate space) and that he had heard (but "couldn't confirm") that someone's scooter was stolen from a hallway. R. 31, Ex. 2 at 52–53. But Bourke neither requested nor produced any documents (nor did he disclose any witnesses) to try to introduce admissible testimony related to the hearsay statements regarding thefts that Bourke made during his deposition. *Id*.,

10

Ex. 28, 29, 30.  Bourke also did not depose any medical providers other than Dr. Uppal, nor did he disclose any expert witnesses.  *Id.*, Ex. 30.

The VA moved for summary judgment, arguing that (1) the VA had offered to reasonably accommodate Bourke, and (2) Bourke, not the VA, was to blame for the breakdown of a continued interactive process, thereby barring relief.  R. 30.  Bourke also moved for summary judgment, arguing that (1) the VA "unilaterally rescinded" Bourke's reasonable accommodation without showing undue hardship, and (2) the VA was not entitled to "re-accommodate" or change Bourke's accommodation.  R. 36.

## 6.    The District Court Decision

The district court granted the VA's motion for summary judgment and denied Bourke's motion.  R. 47; Bourke Short App. at 1–16.  The court first rejected Bourke's theory that the VA had to establish undue hardship to close the entrance that Bourke had been using in order to be able to screen people entering the hospital, finding instead that the VA would have to make such a showing only if it had refused to offer Bourke an alternative reasonable accommodation.  *Id.* at 10.  With regard to Bourke's argument that the VA had "unilaterally rescinded" his accommodation, the district court noted that Bourke could "at best" say that the VA *changed* his accommodation. *Id.*  And while the court found that the VA had not consulted with Bourke *before* enacting or enforcing the screening procedures and resultant door closures (in March 2020 and May 2020, respectively), that fact alone did not violate the Rehabilitation Act.  *Id.* 11.  Finally, as to the issue of whether the VA's offered alternative accommodation (in Building 1, Section C) was reasonable, the district court found that Bourke had failed to carry his burden of showing it was *not* reasonable.  *Id.* at

15–16.  The court concluded that Bourke had not presented sufficient evidence to create an issue for the jury as to whether the proposed alternate accommodation either required too much walking or did not provide sufficiently secure storage for his scooter.  *Id*. at 12–15.

### Summary of Argument

When the VA implemented screening procedures that resulted in the closing of several entrances on the large Hines campus at the start of the COVID-19 pandemic during which people were *dying*, Bourke was *inconvenienced*, as were many employees and patients of the VA.  Bourke did not complain about the entrance closing nor did he take steps to formally request a new accommodation that would allow him to follow the new procedures designed to protect veterans seeking care during the two months or so that he was able to avoid the restriction and enter the hospital unscreened.  But once the jig was up, he took issue with the VA's attempt to enforce the screening procedures that applied to every other VA employee at Hines.  He also thwarted efforts to provide him with a new, temporary accommodation for the roughly seven weeks that his original accommodation was not available.  The district court's grant of summary judgment in favor of the VA and denial of Bourke's motion for summary judgment should be affirmed.

The district court did not err in finding that the VA offered to reasonably accommodate Bourke in May 2020 when the VA proposed moving his reasonable accommodation parking space after learning that he had been entering the hospital *unscreened* for COVID-19 through the entrance at the rear of Building 200, an

entrance that was supposed to be closed to everyone.  Bourke's attempt to recast the temporary change from one accommodation to another as an unlawful "rescission" or "withdrawal" is erroneous because the only reason Bourke went without an accommodation for a short period of time was because of *his* rejection of the VA's offer of a reasonable temporary accommodation.

On appeal, Bourke takes issue with the district court's decision for two reasons. First, Bourke argues that the district court erred when it declined to shift the burden to the VA to demonstrate reasonableness or undue hardship prior to altering Bourke's original accommodation.  But the district court correctly found that the cases Bourke relied on were inapposite.  This is, in large part, because Bourke's premise that his original accommodation was "rescinded"—and therefore possibly triggering the "undue hardship" requirement—is inaccurate.  As the district court correctly noted, "Bourke can at best say that the VA switched from providing one accommodation to another."  Bourke Short App. at 10.

Bourke also argues that the district court erred by concluding that Bourke had failed to present evidence that the VA's offered temporary accommodation was unreasonable because the court had required him to show evidence of a "significant risk" that his scooter would have been stolen at the temporary accommodation site. While the district court commented that there was no evidence of a "significant risk," the court correctly concluded that "Bourke's speculative concerns that his scooter might be stolen [were] not sufficient to create a genuine dispute over whether the VA's proposed storage space was a reasonable accommodation."  Bourke Short App.

at 15. Further, even it if the court erred in using the phrase "significant risk," it was a harmless error because Bourke failed to present *any* admissible evidence—only speculation, which is not sufficient at summary judgment—that there was a risk that his scooter would be stolen from the Patient Advocate space. And, certainly, there is no evidence that he articulated any specific risk to the VA at the time they offered him the alternative temporary accommodation.

Bourke failed to point to evidence that would have allowed a reasonable jury to determine that the VA failed to reasonably accommodate him, and for this reason, the district court's well-reasoned decision should be affirmed.

## Argument

### I.     Standard of Review

This court reviews *de novo* a district court's grant of summary judgment. *Crain v. McDonough*, 63 F.4th 585, 591 (7th Cir. 2023). This court may affirm on any ground supported by the record. *Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 476 (7th Cir. 2022).

### II.    The VA Fulfilled Its Obligations under the Rehabilitation Act.

The district court correctly granted summary judgment in favor of the VA on Bourke's failure-to-accommodate claim. To prevail on summary judgment, Bourke was required to present evidence that (1) he was a qualified individual with a disability, (2) the VA was aware of his disability, and (3) the VA failed to reasonably accommodate his disability. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015); *Hooper v. Proctor Health Care, Inc.*, 804 F.3d 846, 852 (7th

Cir. 2015).[6]  The parties did not dispute below that Bourke was a qualified individual with a disability or that the VA was aware of his disability.  In fact, the parties agree that the VA had accommodated Bourke's disability from the fall of 2019 until May 2020.  However, the district court properly concluded that Bourke did not make a sufficient evidentiary showing as to the third element — that the VA had failed to reasonably accommodate him when it enforced the COVID-19 screening procedures then in place that applied to everyone, employee or patient, entering the hospital.

Before, during, and after the COVID-19 pandemic, Bourke was only ever entitled to a *reasonable* accommodation, not his *preferred* accommodation or the accommodation that was most convenient for him.  *Igasaki v. Ill. Dep't of Fin. and Pro. Regul.*, 988 F.3d 948, 961 (7th Cir. 2021); *Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012); *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005); *Jay v. Intermet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000).  Bourke disputes that the VA's offered temporary accommodation was reasonable based on his speculative concerns over the security of his scooter, but he did not present sufficient evidence on this point.  Nor has he even suggested on appeal that there was another alternative reasonable accommodation available.

As an ancillary to its obligations to accommodate an employee's disability, "an employer often engage[s] with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstance."  *Igasaki*, 988 F.3d at 961

---

[6]  Though *Preddie* and *Hooper* were brought under the ADA, the Rehabilitation Act has adopted the same standard for determining whether a violation has occurred. *Ozlowski v. Henderson*, 237 F.3d 837, 839 (7th Cir. 2001).

(quotation marks and citation omitted). Both Bourke and the VA were obligated to participate in the interactive process in good faith, and if Bourke was not reasonably accommodated following that process, "responsibility will lie with the party that caused the breakdown." *Sears*, 417 F.3d at 805. However, even if Bourke showed that the VA did not participate in the interactive process in good faith (which he did not and cannot do), Bourke cannot create an independent claim that the VA failed to engage without first showing that the accommodation offered to him in May 2020 was *un*reasonable. *Rehling v. City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000) (holding that "a plaintiff must allege that the employer's failure to engage in an interactive process resulted in a failure to identify an *appropriate* accommodation for the qualified individual"); *see also Mays v. Principi*, 301 F.3d 866, 871 (7th Cir. 2002), *overruled on other grounds by EEOC v. United Airlines, Inc.*, 693 F.3d 760 (7th Cir. 2012) (noting that all circuits, save the Ninth, agree that the burden remains on the plaintiff to show "that a reasonable accommodation existed," even where the employer failed to engage in the interactive process). As stated above, Bourke has failed to show that the VA's proposed accommodation was unreasonable.

## III.   The VA Offered Bourke a Reasonable Temporary Accommodation.

The VA had accommodated Bourke with a reserved parking space near the entrance closest to his workplace for about six months when, in March 2020, the VA closed most entrances on the Hines VA campus in order to implement COVID-19 screening procedures with limited resources. The VA gave Hines staff about four days of advance notice of the new procedures. R. 31, Ex. 15. While Bourke contacted

16

the VA police during that time to try to avoid the screening requirement, he did not notify anyone (namely his supervisor or the LRAC) who could adjust or move his reasonable accommodation so that he could access his scooter *and* be screened prior to entering the medical facility. When, in May 2020, the VA discovered that Bourke was avoiding the screening protocol that applied to everyone else and had continued to use the unauthorized entrance at the rear of Building 200, it enforced the screening procedures by definitively locking that door and acted quickly to identify an alternate reasonable accommodation. This was the same accommodation that two other employees had been using during the COVID-19-related door closures, and it was reasonable under the circumstances. The VA also allowed Bourke to retain his original accommodation parking space at the rear of Building 200 so that he could resume using it when, about seven weeks later, the VA was able to reopen that door.

## A. The Temporary Accommodation Offered by the VA Was Reasonable.

On appeal, Bourke does not challenge the district court's finding that the alternate parking space offered to Bourke at Building 1, Section C required less walking (Bourke Short App. at 12), which is the reason he required an accommodation in the first instance. In that sense, there is no issue on appeal as to whether the VA offered to reasonably accommodate his *disability*.[7] Bourke instead

---

[7] An issue not raised in the opening appellate brief is waived. *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 758-59 (7th Cir. 2012). Because Bourke does not argue that the district court erred in its finding that Bourke had failed to provide evidence the offered alternate accommodation was unreasonable in terms of the distance he would have to walk to retrieve his scooter, Bourke has forfeited that argument on appeal.

takes issue with the proposed storage space for his scooter in the Patient Advocate Department, near the alternate parking space.  Bourke. Br. at 16.  According to Bourke, the storage space in the Patient Advocate Department was not secure, and the district court applied an incorrect standard.  *Id*.

On this point, Bourke would have this court believe that the VA had asked him to store his scooter in a space where thefts of scooters and related equipment had previously occurred.  *Id*. at 8.  However, Bourke's citations to the record do not support his claim that there were thefts from the Patient Advocate Department, and, as the district court concluded, Bourke's "speculative concerns" regarding security generally were "not sufficient to create a genuine dispute" as to whether the proposed storage space was reasonable.  Bourke Short App. at 15.  First, Bourke's claim that he offered sufficient evidence to the district court of property being stolen on the Hines campus is greatly exaggerated.  Bourke has presented *no* admissible evidence that any property, let alone a mobility scooter, had been stolen from the Patient Advocate Department.  *See* Bourke Br. at 8.  The record evidence, including the record evidence cited by Bourke, reflects inadmissible hearsay regarding allegedly stolen property from *different* locations on the Hines campus.  R. 31, Ex. 2 at 52–53.  And despite having had the opportunity to fully develop the record to support his hearsay statements, Bourke never sought nor produced any evidence to corroborate his inadmissible hearsay testimony regarding security.

Second, even assuming *arguendo* that there were security concerns in *some* areas of the vast, 147-acre Hines facility, Bourke failed to produce evidence to support

his claim that the Patient Advocate space was insufficiently secure such that the offered accommodation was unreasonable. Nor did Bourke effectively dispute that the Patient Advocate Department was close to the VA Police Department, was a secluded space outside of the public view and common areas, and had no after-hours traffic. *Id.*, Ex. 5 at 24–25; Ex. 9 at 16–17, 20; R. 32 at ¶44. Bourke's supervisor and a doctor stored their scooters in the Patient Advocate office without incident. R. 31, Ex. 5 at 13. And while Bourke claims that his scooter was smaller and capable of being dismantled easily, his supervisor had left the starter key in her scooter on at least one occasion to no ill effect. *Id.* at 24. If it was a reasonable accommodation for others to store their scooters in that out-of-the-way office, it is hard to imagine why it was not a reasonable accommodation for Bourke, unless of course, the issue for Bourke was really that he wanted to keep using the doorway he had been sneaking through for the first few months of the pandemic.

Bourke's subjective beliefs about the security of the Patient Advocate space were *speculative* and did not identify any specific characteristics of the space that would allow a jury to conclude that the space was not adequately secure to act as temporary off-hours storage. *Igasaki*, 988 F.3d at 960 ("impermissible speculation" or "mere assertions" not enough to defeat summary judgment); *Riley v. City of Kokomo*, 909 F.3d 182, 192 (7th Cir. 2018) ("bare speculation or a scintilla of evidence" not sufficient to defeat summary judgment). For this reason, Bourke's citation to *McDaniel v. Syed*, 115 F.4th 805, 823-24 (7th Cir. 2024), does not support his argument that his speculative testimony is enough to overcome summary judgment.

In the passage of *McDaniel* cited by Bourke, this court found in part that the record evidence was sufficient to defeat summary judgment on the issue of whether the defendants had failed to accommodate a federal prisoner with a no-stairs unit. The record evidence in that case included the (mostly) consistent and *specific* testimony of the pro se plaintiff, including citations to defendant's own exhibits, supporting his assertion that he had missed many meals and medications due to being forced to navigate stairs. *Id.* at 813-14, 815 n. 3. This is in stark contrast to Bourke's vague and speculative testimony on the issue of security, which is not supported by other record evidence.

Bourke also complains that the district court erred by requiring him to show a "significant risk" that his scooter would be stolen (Bourke Br. at 16), but though the court used those words, it did not create a new burden of production for the plaintiff. Instead, the court found that Bourke's "speculative concerns" were insufficient to create a genuine issue of fact regarding the reasonableness of the VA's offered accommodation. Bourke Short App. at 15. And even if the district court's use of the phrase "significant risk" was an error, it was a harmless one because, as discussed above, this court has held that "impermissible speculation" or "mere assertions" cannot defeat summary judgment. *Igasaki*, 988 F.3d at 960; *Riley*, 909 F.3d at 192.

## B.     The VA Lawfully (and Temporarily) Altered Bourke's Accommodation Based on Changed Circumstances.

In focusing on framing this case as one involving the "unilateral rescission" of a reasonable accommodation, Bourke fails to articulate or support an argument that an employer cannot *change* or *alter* a reasonable accommodation — even temporarily

— based on changed circumstances. The district court rightly rejected Bourke's framing of the issue, along with the burden-shifting framework proposed by Bourke and first articulated by the Supreme Court in *US Airways, Inc. v. Barnett*, 535 U.S. 391, 402 (2002). Instead, the district court concluded that "Bourke can at best say that the VA switched" accommodations, not that it rescinded his accommodation altogether. Bourke Short App. at 10. And the district court rightly found that a rule preventing employers from altering an accommodation in response to changing circumstances would be in tension with this court's "precedent emphasizing an employer's discretion to choose among reasonable accommodations." Bourke Short App. at 9.

As this court has long held, it "is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Jay*, 233 F.3d at 1017; *EEOC v. Charter Commc'ns, LLC*, 75 F.4th 729, 742 (7th Cir. 2023) (recognizing that this court has "repeatedly" recognized that an "employer need not provide the exact accommodation an employee asks for"); *Igasaki*, 988 F.3d at 961. Further, this court's precedent also establishes that the interactive process is flexible and *on-going*. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1178 (7th Cir. 2013), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016) ("Reasonable accommodation . . . is a process, not a one-off event"). Circumstances may change, and neither the employer nor the employee is locked into an accommodation regardless of what may change in the future.

On the whole, the holdings of this court (including *Jay* and *Cloe*) lead to the logical conclusion that the reasonableness of an accommodation may change over time and that the analysis remains the same whether an employer is accommodating an employee in the first instance or is subsequently re-accommodating the employee in response to some change in circumstance. To illustrate the absurdity of Bourke's argument at the extreme, imagine if the building that Bourke entered was demolished in a fire. Of course the VA would have to change the entrance Bourke used. The fact that the reason the entrance was closed in *this* case was in reaction to a world-wide pandemic that killed millions does not change the fact that the VA was entitled to change the accommodation in light of changed circumstances.

Put differently, if an employer reasonably accommodates an employee, even if it is an alternate, changed, or temporary accommodation, then the employer has fulfilled its obligations under the Rehabilitation Act, and that is the end of the inquiry. *See Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 683 (7th Cir. 2014) (focus is on "the ends, not the means" in context of reasonable accommodations); *see also Rehling*, 207 F.3d at 1016 (a "breakdown of [the] interactive process [does not] render an otherwise reasonable accommodation unreasonable").

In Bourke's case, he was on notice in March of 2020 that he (and all other VA employees) had to be screened upon entering the Hines facilities *and* that the screening procedures would prevent his access to his usual accommodation. In other words, Bourke knew in March 2020 that his original accommodation would no longer be reasonable if he was *also* going to enter the medical facility by one of the authorized

22

entrances.  At that time, Bourke could have (and should have) re-initiated the interactive process, a process with which he was familiar (having obtained his accommodation parking space by working with his supervisor and the LRAC just 6 months prior).  Yet he never communicated to Graham or Scheirer that he was in need of a new accommodation, at least not while he was avoiding the screening requirement.  Nevertheless, because the VA *did* offer to reasonably accommodate Bourke, the VA did not violate the Rehabilitation Act.

> ### i.  This Court Should Reject Bourke's Invitation to Shift the Burden to the VA.

On appeal, Bourke appears to argue that the VA bears the burden of proof to establish that it was reasonable to change Bourke's accommodation or that the VA had to show an undue burden to do so.  Bourke Br. at 12–16.  Relying on *Bilinsky v. American Airlines, Inc.*, 928 F.3d 565 (7th Cir. 2019), Bourke suggests that the VA's implementation and enforcement of its COVID-19 screening procedures constituted a rescission of Bourke's reasonable accommodation that was impermissible in the absence of some other "change in circumstances."  *Id*. at 573; Bourke Br. at 13.

While this court did admonish employers that absent "some change in circumstances, an employer may not rescind an accommodation simply because it is inconvenient or burdensome" (*Bilinsky*, 928 F.3d at 573), that admonishment would be misdirected where, as here, the VA offered to reasonably accommodate Bourke.  Indeed, the application of *Bilinsky* to the present case is questionable for a number of reasons.  First, and it bears repeating, the VA did not *rescind* Bourke's accommodation.  In *Bilinsky*, the plaintiff's accommodation *was* rescinded when her

employer cancelled her work-from-home agreement and required her to return to in-person work *in another state*. *Id*. at 567. And, as a result, she was terminated. *Id*. at 568. That is a far cry from having an employee use a different entrance when the old entrance was closed (not to beat a dead horse, but closed due to a world-wide deadly pandemic).

Next, the primary issue in *Bilinsky* was whether the district court had erred in finding that the plaintiff was not a "qualified individual" under the Americans with Disabilities Act (ADA), and the court did not reach the issue of whether the defendant had engaged in an interactive process to identify an alternate reasonable accommodation. *Id*. at 573-74. Finally, the court ultimately found that the employer *had* encountered a change in circumstance due to a major merger. *Id*. at 572. Unlike the COVID-19 screening procedures, a merger is neither unexpected nor is it (usually) in response to a public health emergency. But, as it turns out, like the merger at issue in *Bilinsky*, the pandemic-related changes here applied to *all* employees, not just the disabled plaintiff. *Id*.

Bourke's reliance on *Isbell v. John Crane, Inc.*, 30 F. Supp. 3d 725 (N.D. Ill. 2014), does not get him any further in establishing that the district court erred in not shifting the burden to the VA zto establish that it acted reasonably in withdrawing (or changing) Bourke's accommodation. Bourke Br. at 13. Not only is *Isbell* a non-precedential district court case, but the facts are also distinguishable. In that case the plaintiff's employer had accommodated her with a later start time of 10:00 a.m. for about 2 ½ years when, under new management, that time was rolled back to 9:15

a.m. *Id.* at 731. Over a period of about 10 months, the plaintiff repeatedly renewed her requests for a 10:00 a.m. start time while also trying to comply with the earlier start time. *Id.* at 731-32. Unable to comply with the new start time on a regular basis, the plaintiff was disciplined and her employment eventually terminated. *Id.* at 733.

The district court in *Isbell* granted summary judgment for the plaintiff on her failure-to-accommodate claim. *Id.* at 736. The district court found that the employer's "unilateral retraction" of the plaintiff's *reasonable* accommodation (without proffer of a "real reason" for doing so) was discriminatory. *Id.* at 734. The court was clearly troubled by the fact that the employer in that case had not been able to articulate a reason as to why management reduced the plaintiff's reasonable accommodation, even though she had been able to successfully perform her essential job duties with the later start time. *Id.* at 734. Here, the VA *did* articulate a reason why there was a change in this case, namely to try to save lives.

Despite the differences between *Isbell* and the present appeal, the VA did exactly what Bourke argues *Isbell* requires because it offered to adjust his accommodation in response to changed circumstances. Bourke Br. at 14; *Isbell*, 30 F. Supp. 3d at 734. The VA did not fail to accommodate Bourke simply because it did not adjust the existing accommodation in the *way* that he hoped. Bourke does not dispute on appeal that the offered alternate parking space would have required *less* walking than his original accommodation. And as discussed above, Bourke did not

present admissible evidence that his concerns over the security of his scooter were substantiated.

Crucially, and unlike the plaintiff in *Isbell*, Bourke does not here contend that his original accommodation continued to be reasonable in light of the COVID-19 screening procedures.[8] Even on May 14, 2020, the day that the rear doors to Building 200 were locked, Bourke asked the VA for *new* parking space until those doors reopened; he did not to ask to maintain his original arrangement despite the mandatory screening procedures. R. 31, Ex. 16.

Finally, Bourke's reliance on *Kassa v. Synovus Fin. Corp.*, 800 F. App'x 804 (11th Cir. 2020), is similarly misplaced. The plaintiff in *Kassa* complained that his new manager had *stopped* accommodating his disabilities whereas a prior manager had allowed him to take short breaks as necessary. As part of the restructuring that resulted in the plaintiff being assigned to the new manager, the plaintiff had informed his employer of his disabilities and requested he be allowed to take short breaks, along with a number of other requested alternate accommodations. *Id.* at 806-7. The Eleventh Circuit first noted that the plaintiff bears the burden to identify an accommodation and demonstrate that the accommodation is reasonable, and that an employer is not liable for failing to engage in the interactive process if the plaintiff

---

[8] Any argument that the VA should have exempted Bourke from the COVID-19 screening procedures and/or allowed him to continue to use the rear entry to Building 200 (with or without screening) was not developed below and was not raised in Bourke's opening brief. Further, he appears to concede that the accommodation he initially proposed to his supervisor (space in the Emergency Department) was also not reasonable, because he fails to raise that argument on appeal. Any such arguments are, therefore, waived. *Wachovia*, 674 F.3d at 758-59.

cannot meet this burden.  *Id*. at 809 (citing *Frazier-White v. Gee*, 818 F.3d 1249, 1255, 57-58 (11th Cir. 2016); *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997)). Finding that the previously granted accommodation of short breaks was reasonable, the court reversed the grant of summary judgment for the employer.

*Kassa* is inapposite because, as with *Bilinsky* and *Isbell*, it presents a case where the employer *stopped* accommodating its employee.  Again, here the VA *changed* Bourke's accommodation temporarily by offering him an alternative *reasonable* accommodation while the doors closest to his original accommodation parking space remained closed for COVID-19 screening procedures.  And, as with *Isbell*, *Kassa* points to another reason why Bourke cannot succeed on his Rehabilitation Act claim; namely, that he never identified an alternate accommodation that was *reasonable*.  In *Kassa*, the plaintiff sought an accommodation that had previously been granted and was reasonable.  By contrast, when Bourke's usual accommodation became temporarily *un*reasonable due to necessary pandemic screening procedures, Bourke did not identify a reasonable alternative to the temporary accommodation offered by the VA.

### ii.   Bourke's Claim Fails Even Under an Undue Hardship Framework.

To the extent that Bourke argues on appeal that *Barnett*'s burden-shifting framework applies to this case, he is wrong.  As the district court found, *Barnett* and its progeny apply to a narrow class of cases where the employer declined (or refused) to provide *any* reasonable accommodation.  Bourke Short App. at 8–9 (*citing Barnett*, 535 U.S. at 395 (employer airline "decided not to make an exception" to its seniority

system in order to accommodate disabled employee)).  And this court has recognized that *Barnett* created a "narrow, fact-specific exception" where a plaintiff may show that special circumstances would allow for the ADA (or the Rehabilitation Act) to trump an employer's seniority system.  *United Airlines*, 693 F.3d at 764 (overruling *Mays*, 301 F.3d at 866, on this point for having impermissibly expanded the exception).

Unlike the employers in *Barnett* or *United Airlines*, the VA offered Bourke a reasonable alternate accommodation.  Further, even after *Barnett* and *United Airlines*, this court has "repeatedly" recognized that an "employer need not provide the exact accommodation an employee asks for." *Charter*, 75 F.4th at 742.  Instead, the duty of the employer is satisfied when it "does what is necessary to enable the disabled worker to work in reasonable comfort" (or offers to do so).  *Id.* (citation omitted).

But even assuming *arguendo*, that *Barnett*'s two-step analysis applied to this case (and it does not), Bourke fails at the first step.  The burden-shifting framework of *Barnett* requires a plaintiff to first make a showing that their proposed accommodation is reasonable on its face.  *Barnett*, 535 U.S. at 401-02; *United Airlines*, 693 F.3d at 762.  Only once a plaintiff makes this showing does the burden shift to the employer to show undue hardship.  *Id.*  Bourke misapplies *Barnett*'s requirement that a proposed accommodation be "reasonable on its face" to both his original accommodation and the Building 1, Section C accommodation proposed by the VA as an alternative.  Bourke Br. at 11.  But the key point is that Bourke cannot prevail on

this argument because he does not raise *any* argument on appeal that there was another reasonable accommodation in May 2020 that the VA failed to consider.

Despite describing his original accommodation as "reasonable on its face," Bourke does not argue that his accommodation at the rear of Building 200 was reasonable *in May 2020*, when his routine was first disrupted, nor can he do so. As the then-Assistant Director at Hines, Jon Beidelschies, testified, limitations on staff and equipment limited how many doors could be staffed for COVID-19 screening in the early months of the pandemic, and the Hines incident command looked to specific factors to determine where to place those limited resources. R. 31, Ex. 14 at 8–11, 28. The main entrance to Building 200 and the nearby entrance to the Emergency Department, were already staffed for screening, and as Beidelschies explained, due to the large space occupied by the Hines campus, the incident command made the initial decision to spread the authorized entrances across the various Hines buildings. *Id*. at 9–10. Bourke has not meaningfully challenged the VA's decisions about where to staff entrances for screening (R. 32 at ¶¶ 21–27), nor does he raise any such issue on appeal (thereby waiving those issues).

Bourke also does not now argue that his proposed accommodation near the Emergency Department was reasonable. First, Bourke has *never* identified a secure storage space near the Emergency Department where he would have been able to store his scooter on his off hours (a fact that is irreconcilable with his professed concern over security). And, again, Bourke has failed to dispute the testimony of various VA employees regarding the impracticalities of storing personal equipment

29

in the Emergency Department during the COVID-19 pandemic. *Id*. at ¶¶ 37–38. Maybe one could argue about which space was more likely to be secure, but it was not unreasonable for the VA to offer a storage space in a restricted area that was closed during off hours and that was being used without incident by others to store their scooters instead of in a 24-hour Emergency Department with all the access that entails. In any event, *if Barnett* were to apply to this case, Bourke would fail at step one because he did not meet his prima facie burden to show that there was a reasonable accommodation available that the VA did not adopt.

## Conclusion

For the foregoing reasons, this court should affirm the judgment of the district court.

Respectfully submitted,

MORRIS PASQUAL
Acting United States Attorney

THOMAS P. WALSH
Assistant United States Attorney
Civil Division Chief

 s/ Nicole Flores
NICOLE FLORES
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9082
nicole.flores3@usdoj.gov

**Certificate of Service**

I hereby certify that on February 14, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Nicole Flores
NICOLE FLORES
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9082
nicole.flores3@usdoj.gov